OPINION
Defendant-appellant, William Lewis, appeals his conviction in the Belmont County Juvenile Court for causing a juvenile, fifteen-year-old Renee Snider (Renee), to become an unruly child in violation of R.C.2919.24(A)(2).
In November 1998, before the alleged crime occurred, the Department of Human Services (DHS) had implemented a case plan in response to Renee's request to stay with her grandmother during her pregnancy. The agreement provided that Renee and her father, Gregory Snider (Snider), would not have telephone or physical contact with appellant, because Snider believed that appellant was the father of Renee's child. Renee was upset by these allegations, which she claimed were false. Renee and her father were having problems in their relationship, and Renee testified that appellant had witnessed Snider hitting her. She also testified that she considered appellant to be a friend with whom she had a good relationship. Appellant had been in the hospital on January 1, either the day of or the day prior to the alleged crime (see discussion of date discrepancy infra), and he was released later that day. He is on a list of potential candidates for heart transplants.
The dates of the alleged crime are in dispute. While Snider first testified that Renee was missing on January 2 and 3, he later testified that he was certain that the occurrence was on January 1 and 2, which is consistent with the date that appears on the complaint he filed on January 11. Thus, Snider ultimately claimed that on January 1, 1999, he arrived at his house after returning his son to his ex-wife's home. He discovered that Renee was missing and called several places, including the sheriff's department, in an attempt to locate her. Snider had not contacted appellant due to the case plan implemented by DHS. The following day, Snider received a number of phone calls from Renee's friends and later from appellant himself, indicating that Renee was at appellant's house. Snider drove to appellant's house and blew the car horn. Yet when Renee remained in the house, Snider went to the police department as suggested by Officer Maynard (Maynard) during a previous phone conversation he had had with her. He then returned to appellant's house accompanied by Maynard and successfully retrieved his daughter.
According to Renee, appellant picked her up at her father's house on January 2, 1999 after she had contacted him and asked to be taken to her aunt's house. At this time, she informed appellant of the agreement implemented by DHS. Appellant brought Renee to his residence. Although Renee later indicated that she wished to be taken to her grandmother's house, appellant refused. Renee spent the night at appellant's house and again asked to be taken to her grandmother's house the next day. When appellant again denied Renee's request, she threatened to leave and walk to her grandmother's house. Appellant called the Shadyside Police and spoke to Maynard. According to Renee and Maynard, he had contacted the police because he was concerned about getting into trouble for having Renee at his house. Officer Maynard arrived at appellant's house and advised Renee to remain there until she could contact Renee's grandmother. Renee remained at appellant's house until Snider came to the house and retrieved her. Renee testified that, although she acted in an unruly manner as a runaway, she did not believe that appellant contributed to this behavior.
On January 11, 1999, Snider filed a complaint charging appellant with two counts of violating R.C. 2919(A)(2). Counts I and II referred to January 1-2, 1999 and January 5, 1999, respectively, and both alleged the following:
 "* * * William Lewis did act in a way tending to cause a child or a ward of the Juvenile Court, to-wit: Renee Snider, age 15 (D.O.B. 03-04-83), to become an unruly child as defined in Section 2151.022 of the Revised Code. All in violation of Ohio Revised Code Section 2919(A)(2)."
Appellant waived his right to a jury trial, and a bench trial commenced on April 13, 1999. Counsel for appellant moved for a judgment of acquittal on both counts, and the trial judge granted acquittal with respect to Count II. The trial was then continued and resumed on July 22, 1999. On July 23, 1999, the trial judge found appellant guilty of Count I. On August 18, 1999, appellant received a suspended thirty-day jail sentence.
Appellant appealed the decision to this court on September 10, 1999. Appellant claims in his only assignment of error that:
 "THE TRIAL COURT ERRED IN REACHING A VERDICT OF GUILTY, IN THAT THERE WAS INSUFFICIENT EVIDENCE TO FIND THE APPELLANT GUILTY BEYOND A REASONABLE DOUBT AND THE TRIAL COURT'S GUILTY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Thus, appellant presents two arguments first, that the evidence was insufficient to find appellant guilty beyond a reasonable doubt, and second, that the trial court's verdict was against the manifest weight of the evidence. A reversal based on the weight of the evidence can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the fact-finder to convict. State v.Thompkins (1997), 78 Ohio St.3d 380, 388.
R.C. 2919.24 states:
"(A) No person shall do either of the following:
"* * *
 "(2) Act in a way tending to cause a child or a ward of the juvenile court to become an unruly child, as defined in section 2151.022 of the Revised Code, or a delinquent child, as defined in section 2151.02 of the Revised Code.
 "(B) Whoever violates this section is guilty of contributing to the unruliness or delinquency of a child, a misdemeanor of the first degree. Each day of violation of this section is a separate offense."
Appellant's sole argument to demonstrate insufficiency of evidence concerns the discrepancy in the witnesses testimony about the date of the alleged crime. Appellant states that all elements of the crime must be proven beyond a reasonable doubt to sustain the conviction against appellant. He then describes how Snider changed his testimony during the trial, from first alleging that Renee ran away on January 2 to later claiming with certainty that the incident actually occurred on January 1. Contrarily, Renee testified that she was confident that she had run away on January 2. From this testimony, appellant concludes that the conviction must not be sustained, because there were no allegations of wrongdoing for January 3 in the complaint. Appellant appears to be claiming that the essential elements of the offense in this case have not been proven beyond a reasonable doubt because the date of the alleged crime placed on the complaint was potentially incorrect.
Sufficiency of evidence is the legal standard applied to determine whether the evidence is legally sufficient as a matter of law to support the fact-finder's verdict. State v. Smith (1997), 80 Ohio St.3d 89, 113. Essentially, sufficiency is a test of adequacy. Thompkins,78 Ohio St.3d at 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Emphasis added.) Smith, 80 Ohio St.3d at 113. Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Precise times and dates are ordinarily not essential elements of offenses. State v. Sellards (1985), 17 Ohio St.3d 169, 170-171. R.C.2941.05 describes the content requirements for information charging an offense:
 "In an indictment or information charging an offense, each count shall contain, and is sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations not essential to be proved. It may be in the words of the section of the Revised Code describing the offense or declaring the matter charged to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is charged."
Also, R.C. 2941.01(E) states in pertinent part that:
 "An indictment or information is sufficient if it can be understood therefrom:
"* * *
 "(E) That the offense was committed at some time prior to the time of finding of the indictment or filing of the information."
No issue concerning the sufficiency of the evidence even exists in this case, because the date on which Renee ran away is not an essential element of the offense. The information charging appellant of the offense sufficiently averred the essential elements of the alleged crime. Using the words of the Revised Code, the information expressed that appellant had committed the offense of causing a child to become an unruly child. Appellant had notice of the specific crime of which he was charged. Therefore, the complaint satisfied the requirements of R.C. 2941.05. Also, the information was in accordance with R.C. 2941.01(E), because the offense occurred on January 1 and 2 or January 2 and 3, both of which were prior to the filing of the complaint on January 11.
Even if the date is considered to be an essential element of the offense, the trial judge's findings of fact should receive deference. During trial, Snider explained to the defense attorney, Christopher Berhalter (Berhalter) the reason that he changed his testimony:
 "Berhalter: So when you testified that she ran away on the second, that was incorrect?
 "Snider: It must have been. I was going with what Mr. Shaheen [the prosecuting attorney] had told me. I wasn't sure of the date when I came in here. If I had that piece of paper that Doug Butts [the DHS worker who implemented the case plan] had, I would have known for sure." (Tr. 12)
These discrepancies in Snider's recollection of the date of the occurrence, as well as the inconsistency between Snider's and Renee's testimony regarding the occurrence, raise issues of credibility and the weight to be given the testimony issues which are primarily for the trier of fact. DeHass, supra. Sufficient evidence was presented for the trial judge to find that appellant committed the offense on January 1 and 2.
Thus, sufficiency of the evidence is irrelevant here because appellant does not demonstrate a dispute over the proof of any essential elements
of the alleged crime, and the complaint sufficiently averred the essential elements. Even if the date of the offense is considered to be an essential element of the offense, the trial court finding regarding the date should receive deference. Therefore, appellant fails to show how, when viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could not have found the essential elements of the crime proven beyond a reasonable doubt. According toSmith and Thompkins, this evidence is sufficient to sustain the conviction.
Appellant also argues that even if the evidence is sufficient to support conviction, the trial judge's verdict is against the manifest weight of the evidence. In support of this contention, appellant explains that he was acting in the best interest of Renee by requesting advice from the police and then following their directions to keep Renee at his house until her grandmother was contacted. Also, he contacted Snider the day after Renee ran away to advise him of her location. Appellant argues that he was concerned for Renee. He had witnessed previous physical abuse Renee had experienced, and Renee considered him to be a friend helping her rather than a cause of her unruliness.
In determining whether a verdict is against the manifest weight of the evidence, a court of appeals must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See Thompkins,78 Ohio St.3d at 387. "Weight of the evidence concerns `the inclination of the greateramount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) Id. In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all the evidence produced at trial. Id. at 390 (Cook, J., concurring).
Credible evidence was offered at trial to support appellant's conviction. Renee testified that she believed that she was in fact a runaway and an unruly child. She admitted that she knew that her father did not want her to have contact with appellant, yet she stayed at appellant's house overnight. Renee also testified that she notified appellant that she was not to have contact with him. Although Renee repeatedly requested that she be taken to her grandmother's house, appellant refused. At last when she threatened to leave and walk to her grandmother's house, appellant called the police.
After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, the trial judge did not clearly lose his way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The evidence does not weigh heavily against the conviction and thus the conviction was not against the manifest weight of the evidence.
The trial court did not err in reaching a verdict of guilty, because there was sufficient evidence to find appellant guilty beyond a reasonable doubt and the verdict was not against the manifest weight of the evidence. Accordingly, appellant's assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
HON. CHERYL L. WAITE, HON. GENE DONOFRIO, and HON. JOSEPH J. VUKOVICH.